P/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                  Plaintiff,

-against-

NEW YORK MERCHANTS PROTECTIVE CO.,
INC., NMP HOLDINGS CORP., SHERVIN
ALLEYNE, KARLENE RODRIGUEZ, and RONALD
J. FRIEDMAN, individually and as Receiver for NMP
Holdings Corp. fka New York Merchants Protective
Co.,

                  Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-1520 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Philadelphia Indemnity Insurance Company brings this action seeking a judicial declaration as to its obligations under an insurance policy issued to the New York Merchants Protective Company, Inc. ("NYMP"). (Compl. (Dkt. 1).) Underlying this action is a state court action in which Defendant Karlene Rodriguez maintains that Plaintiff is required to indemnify the driver who injured her.

Before the court is Plaintiff's motion for partial summary judgment (the "Motion"). (See Mot. for Summ. J. ("Mot.") (Dkt. 25).) Of the named defendants, only Rodriguez opposes the motion. (Rodriguez's Opp'n to Mot. ("Opp'n") (Dkt. 26).) For the following reasons, the court GRANTS Plaintiff's Motion.

1

I.  BACKGROUND

The facts in this opinion are drawn, where possible, from the parties' statements of undisputed facts, submitted pursuant to Local Rule 56.1.[1] (See Pl. R. 56.1 Statement (Dkt. 25-2)); Rodriguez R. 56.1 Statement (Dkt. 26-1).) See also Holtz v. Rockefeller &Co., 258 F.3d 62, 73 (2d Cir. 2001) (The court "is not required to consider what the parties fail to point out in their Local Rule 56.1 statements." (internal quotation marks and citations omitted)). This opinion relies only on facts in the parties' Rule 56.1 statements that are truly undisputed and notes any apparent disagreement over any material allegation.

A.  **Insurance Policy**

On January 30, 2012, Plaintiff issued NYMP a "business automobile policy" (the "Policy") that covered the period from January 27, 2012, through January 27, 2013. (Pl. R. 56.1 Statement ¶ 1.) The Policy provided up to $1 million in commercial automobile liability coverage to NYMP. (Id. ¶ 2.) The Policy also listed several "specifically described" automobiles covered thereunder, including a 2008 Chevrolet Colorado bearing Massachusetts license plate number M33022 (the "Subject Vehicle"). (Id. ¶¶ 3-4.) Plaintiff states that, at the time the Policy was initiated, NYMP represented that NYMP owned the Subject Vehicle. (Id. ¶ 5.)

B.  **Action against NYMP and Sale of the Automobile**

In connection with a civil action alleging that NYMP had engaged in a multimillion dollar fraud, Defendant Ronald J. Friedman was appointed as receiver for NYMP. (Id. ¶ 17.) By order of the overseeing court, NYMP sold "substantially all" of its assets to NYMP Acquisition,

---

[1] Where the relevant facts are not in dispute, the court cites to the parties' Rule 56.1 statements and omits the underlying citations to the record.

2

LLC ("NYMP Acquisition") on or around February 24, 2012. (Id. ¶¶ 20-22.) The Subject Vehicle was among the assets sold in this transaction. (Id. ¶¶ 23-24.) NYMP did not inform Plaintiff of this sale prior to May 30, 2012. (Id. ¶ 26; see also NYMP & Friedman Ans. ("NYMP Ans.") (Dkt. 6) ¶ 32.) Following its purchase of NYMP's assets, NYMP Acquisitions obtained a commercial automobile insurance policy from the Tower Group Company of New York. (See Ex. E. to Opp'n ("Tower Policy") (Dkt. 27-6) at 16.) This policy included $1 million in liability coverage. (Id.)

### C.  The Automobile Accident

On May 30, 2012, the Subject Vehicle and an automobile in which Rodriguez was a passenger were involved in a collision in Brooklyn, New York (the "Collision"). (Pl. R. 56.1 Statement ¶ 6; see also Rodriguez R. 56.1 Statement at ECF p.3.) At the time of the Collision, the Subject Vehicle was operated by Defendant Shervin Alleyne. (Pl. R. 56.1 Statement ¶ 8.) A contemporaneous police report prepared in connection with the Collision states that the Subject Vehicle was owned by NYMP and insured by Plaintiff. (Ex. A to Opp'n. ("Police Report") (Dkt. 26-3).) This report notwithstanding, Alleyne states that he was employed by NYMP Acquisition—not NYMP—at the time of the Collision and that he was operating the vehicle in the course of his employment responsibilities for that company.[2] (Alleyne Aff., Ex. B to Mot. ("Alleyne Aff.") (Dkt. 25-6) ¶¶ 4-5.)

### D.  The State Action

Rodriguez claimed to have been injured in the Collision and, on November 22, 2012, she brought suit in the Supreme Court of New York, Kings County (the "State Action"). (Pl. R. 56.1

---

[2] Rodriguez does not directly contest this allegation, but contends that the police report listing NYMP as the owner of the vehicle "raises the permissible inference that [] Alleyne was employed by [NYMP] at the time of the occurrence." (Rodriguez R. 56.1 Statement at ECF pp.1-2.)

3

Statement ¶¶ 7, 13.) She named NYMP, NMP Holdings Corp.,[3] Alleyne, and the driver of the car in which she was a passenger as defendants in that suit. (Id. ¶ 13.) Plaintiff assigned counsel to defend NYMP, NMP Holdings, and Alleyne. (Id. ¶ 16.)

In connection with the State Action, counsel assigned by Plaintiff to represent NYMP, NMP Holdings, and Alleyne initially admitted Rodriguez's allegations that, at the time of the Collision: (1) NYMP was the registered owner of the Subject Vehicle; (2) Alleyne was an employee of NYMP; and (3) Alleyne was operating the subject vehicle with NYMP's permission, consent, and knowledge and within the scope of his employment.[4] (Compare Ex. B to Opp'n ("State Compl.") (Dkt. 26-4) ¶¶ 11, 16-19, 21, 23, with Ex. C to Opp'n ("State Ans.") (Dkt. 26-5) ¶ 1.) NYMP, NMP Holdings, and Alleyne also provided Rodriguez with a "Supplemental Insurance Disclosure" which stated that those defendants were covered by Plaintiff under the Policy, and a separate insurance policy providing $4 million commercial excess coverage. (Ex. C to Opp'n ("Suppl. Ins. Disclosure") (Dkt. 26-6) at ECF p.16.)

Counsel appointed by Plaintiff has represented NYMP, NMP Holdings, and Alleyne in the State Action since at least April 23, 2013 (the date on which those parties filed their answer in the State Action).[5] During this period, the parent company of NYMP Acquisitions' commercial automobile insurer went into liquidation proceedings based on a finding that the insurer was insolvent. (See Ex. F to Opp'n ("CastlePoint Liquidation Order") (Dkt. 26-8).)

---

[3] The complaint states that NYMP changed its name to NMP Holdings on January 4, 2011. (Compl. ¶ 9.) This name change notwithstanding, the parties continue to refer to NYMP and NMP Holdings as distinct entities and do not further clarify the relationship between them.

[4] Rodriguez states that NYMP and NMP Holdings moved to amend these statements in their answer on August 1, 2016. (Opp'n at 4.)

[5] Plaintiff states that "counsel assigned . . . to represent Shervin Alleyne has [] been relieved based on the fact that Shervin Alleyne was not an employee of [Plaintiff's] insured on" the date of the accident. (Pl. R. 56.1 Statement ¶ 16.) Neither party indicates whether counsel appointed by Plaintiff continues to represent NYMP or NMP Holdings in the State Action, however.

4

### E. Procedural History

Plaintiff filed the present action on March 29, 2016. (See generally Compl.) Plaintiff seeks judicial declarations that: (1) Friedman, as receiver for NYMP, sold the subject vehicle on or about February 24, 2012; (2) neither NYMP nor NMP Holdings owned the subject vehicle on May 30, 2012, the date of the Collision; (3) Alleyne was not an employee of NYMP or NMP Holdings on May 30, 2012; and (4) Plaintiff has no duty to defend or indemnify NYMP, NMP Holdings, or Alleyne in the State Action. (Id. at ECF pp.7-8.) On April 26, 2016, Friedman answered the Complaint on behalf of himself and NYMP (NYMP Ans.), while Rodriguez answered separately on April 28, 2016 (Rodriguez Ans. (Dkt. 9)). NMP Holdings and Alleyne have not answered or otherwise appeared in the case.[6]

## II. DISCUSSION

Before the court is Plaintiff's motion for partial summary judgment as to its duty to defend or indemnify NYMP or NMP Holdings in the State Action.[7] (See Mot. at 1-2; see generally Mem. in Support of Mot. ("Mem.") (Dkt. 25-1).) Plaintiff argues that NYMP's sale of the vehicle before the Collision terminated NYMP's "insurable interest" in that vehicle, releasing Plaintiff from any duty to defend or indemnify NYMP or NMP Holdings under the Policy. (Id. at 6-7.) In response, Rodriguez does not claim that the Policy was in force that the time of the Collision, but instead maintains that Plaintiff should be required to provide coverage for NYMP,

---

[6] Friedman's answer lists him as appearing "individually and as Receiver for NMP Holdings Corp. fka New York Merchants Protective CompanyEngineering [sic], L.P." (NYMP Ans. at ECF p.4). In the answer itself, however, Friedman only states that he appears "in his capacity as receiver for New York Merchants Protective Co., Inc." (Id. at ECF p.1.) As noted, the parties fail to clarify the relationship between NYMP and NMP Holdings, and the court is unable to determine whether Friedman intended to respond on behalf of both entities.

[7] While Plaintiff appears to present the Motion as seeking summary judgment as to all claims, the Motion does not include any mention of the first three declarations sought in its Complaint, i.e. the sale or ownership of the Subject Vehicle and Alleyne's employer at the time of the Collision. (See generally Mot.) While the court addresses the first requested declaration—the sale of the vehicle—as part of its analysis of the issues presented, it declines to reach the remaining two declarations, which are not squarely presented here. See infra note 8.

5

NMP Holdings, and Alleyne based on the doctrine of equitable estoppel. (Opp'n at 5-16.) The court concludes that, based on the current record, Plaintiff is entitled to declaratory judgment as a matter of law and grants the motion for partial summary judgment.

### A. Legal Standard

A court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (E.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

B.  Analysis

Plaintiff argues that the undisputed facts demonstrate that the Policy had been terminated by the time of the Collision and Plaintiff is therefore entitled to a declaration that it is under no duty to defend or indemnify NYMP, NMP Holdings, or Alleyne with respect to the Collision. (See generally Mem.) Rodriguez, on the other hand, argues that Plaintiff should be equitably estopped from denying coverage under the Policy based on its three-year delay in claiming that the Subject Vehicle was not covered by the Policy at the time of the Collision. (See generally Opp'n.) The court concludes that the Policy had been terminated by the time of the Collision, and that Rodriguez fails to make out a sufficient showing of prejudice to the insured parties to estop Plaintiff from denying coverage.

1.  Policy Coverage and Equitable Estoppel

As a general rule, an automobile insurer is not subject to a duty to defend or indemnify insured parties for an accident that occurs while the insurer's policy is not in effect. See Eagle Ins. Co v. Zuckerman, 753 N.Y.S.2d 128, 129-30 (N.Y. App. Div. 2003). One way in which automobile policy coverage can be terminated is through transfer of title to the covered vehicle by the insured party to another owner. See Allstate Ins. Co v. Santos, 673 N.Y.S.2d 694 (N.Y. App. Div. 1998); Matter of Feliciano, 528 N.Y.S.2d 653, 654 (N.Y. App. Div. 1988); see also Phoenix Ins. Co. v. Guthiel, 141 N.E.2d 909, 911-12 (N.Y. 1957) ("[C]overage created or arising out of the ownership, maintenance or use of a described automobile ceases and terminates with the transfer of the ownership of the described automobile, unless notice has been given to the insurer and the insurer consents to the extension of coverage.")

Moreover, the insured party's sale of insured property may deprive them of an "insurable interest" in that property and so render unenforceable any ostensible obligations on the insurer's part. Under New York Insurance Law Section 3401,

> [n]o contract or policy of insurance on property made or issued in this state, or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured. In this article, "insurable interest" shall include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.

N.Y. Ins. Law § 3401. "In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from its destruction, termination, or injury by the happening of the event insured against." Scarola v. Ins. Co. of N. Am., 292 N.E.2d 776, 777 (N.Y. 1972). Where the policy holder does not have an insurable interest in the insured property, the policy is rendered void and unenforceable. Azzato v. Allstate Ins. Co., 951 N.Y.S.2d 726, 733 (N.Y. App. Div. 2012). In the case of an automobile, a party does not have an insurable interest—and so cannot maintain an insurance policy—as to that automobile if they neither own nor possess the vehicle. See, e.g., Peker v. Allstate Ins. Co., 787 N.Y.S.2d 383, 384 (N.Y. App. Div. 2004).

Against this backdrop, the doctrine of equitable estoppel has only limited application. Generally speaking, estoppel cannot operate to create insurance coverage where none would otherwise exist. See, e.g., Sedgwick Ave. Assocs. v. Ins. Co. of the State of Pa., 610 N.Y.S.2d 39, 39 (N.Y. App. Div. 1994) ("Where there is no coverage under an insurance policy because the policy was not in existence at the time of the accident, estoppel cannot be used to create coverage.") However, a limited exception to this rule allows equitable estoppel to extend policy coverage "where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance

on which the insured suffers the detriment of losing the right to control its own defense." Albert J. Schiff Assocs., Inc. v. Flack, 417 N.E.2d 84, 87 (N.Y. 1980). Injury to the insured party may not be presumed, and "is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." See Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co., 807 N.Y.S.2d 62, 68 (N.Y. App. Div. 2006) (citation omitted). This prejudice may be found where, for instance, a belated denial of coverage endangers the insured party's ability to settle a case, implead a party, or where the trial is impending. Hartford Ins. Grp. v. Mello, 437 N.Y.S.2d 433, 434-35 (N.Y. App. Div. 1981); U.S. Fid. & Guar. Co. v. N.Y. Susquehanna & W. Ry. Co., 713 N.Y.S.2d 624, 625-26 (N.Y. App. Div. 2000); Yoda, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 931 N.Y.S.2d 18, 20-21 (N.Y. App. Div. 2011).

The relevant prejudice under this standard is that suffered by the insured party. Insurers are under no obligation to disclaim coverage to non-insured parties, and a non-insured party cannot extend an insurer's coverage through equitable estoppel based on such failure to disclaim. See In re U.S. Specialty Ins. Co., — N.Y.S.3d—, 2017 WL 2800912, at *3 (N.Y. App. Div. 2017) ("[I]t is clear that equitable estoppel is of no aid to respondent, who was not an insured under the policy issued by petitioner .... Simply put, inasmuch as respondent was not an insured under the policy issued by petitioner and petitioner did not in fact provide [] coverage to respondent under the terms of the subject policy, petitioner was under no concomitant obligation to disclaim."). Relatedly, equitable estoppel cannot extend coverage to a party that lacks an insurable interest in the property to be covered, as "the insurable interest requirement is statutory [and so] not subject to estoppel." Mikaelian v. Liberty Mut. Ins., No. 15-CV-6182 (JFB) (AYS), 2016 WL 4702106, at *6 (E.D.N.Y. Sept. 8, 2016).

2. <u>Application</u>

Rodriguez's argument that Plaintiff is bound to provide defense and indemnification to the insured parties fails. At the outset, it is clear that, at the time of the Collision, the Policy was no longer in force with respect to the Subject Vehicle: NYMP's transfer of title to that vehicle terminated the Policy, and Plaintiff did not receive notice of the transfer or consent to continue its coverage.[8] See Phoenix Ins. Co., 2 N.Y.2d at 589; Santos, 673 N.Y.S.2d at 694.

Rodriguez does not contest this point, but instead argues that the court should estop Plaintiff from denying coverage based on its delay in asserting that the Policy had been terminated and the resulting prejudice to both her and the insured parties. (See Opp'n at 7.) Any prejudice suffered by Rodriguez is irrelevant, however. Because Rodriguez was not an insured party, Plaintiff was under no duty to disclaim coverage to her, In re U.S. Specialty Ins. Co., 2017 WL 2800912, at *3, and any prejudice she suffered is outside the scope of the equitable estoppel inquiry, cf. Federated Dep't Stores, 807 N.Y.S.2d at 68 (stressing the need to show prejudice to insured parties). Rodriguez's claims of prejudice to the insured parties—NYMP and NMP

---

[8] Rodriguez does not contest that the Subject Vehicle was sold to NYMP Acquisitions or Plaintiff's assertion that Plaintiff was not notified of that sale. (Compare Pl. R. 56.1 Statement ¶¶ 22-26 with Rodriguez R. 56.1 Statement.) Instead, she contends that statements in the police report documenting the Collision and the initial answer in the State Action give rise to a "permissive inference" that the Subject Vehicle was owned by NYMP or NMP Holdings, and that Alleyne was employed by NYMP at the time of the Collision. (Rodriguez R. 56.1 Statement at ECF pp.1-2.) Rodriguez's arguments on these points are difficult to understand in light of her apparent acknowledgment that the Subject Vehicle had already been sold by the time of the Collision. More importantly, those questions are irrelevant to the present analysis: the uncontested sale of the Subject Vehicle without notice to Plaintiff terminated the Policy as a matter of law.

Holdings[9]—are also unavailing. Despite Rodriguez's arguments on their behalf, those entities have not come forward to allege that they have in fact been prejudiced by Plaintiff's control of the litigation. In the absence of concrete allegations of prejudice by the affected parties, Rodriguez effectively asks the court to presume prejudice on their behalf. This the court cannot do. Cf. Federated Dep't Stores, 807 N.Y.S.2d at 68 ("Prejudice [] is not uniformly presumed [where the insurer takes control of the insured's defense], and estoppel will only lie if the <u>insured</u> has demonstrated prejudice by the insurer's actions." (emphasis added)).

Relatedly, the insured parties' failure to intervene on their own behalf results in uncertainty as to whether those parties suffered any prejudice that would provide a basis to estop Plaintiff from denying coverage. Rodriguez argues in general terms that Plaintiff's control over the defense in the State Action prevented the parties from settling the case before the Tower Insurance Company's liquidation. (Opp'n at 7.) She does not, however, support this argument by pointing to facts that indicate that settlement talks occurred, let alone that the disparity in coverage amounts available under the Policy and afterwards influenced the insured parties' position in those discussions. Likewise, while Rodriguez contends that Tower Insurance Company's liquidation may render it unable to satisfy any adverse judgment in the State Action,

---

[9] It is not clear that either NYMP or NMP Holdings were party to any valid insurance policy with Plaintiff at the time of the Collision. Plaintiff states in its Rule 56.1 statement that NYMP sold all "Automotive Vehicles" three months prior to the Collision. (Pl. R. 56.1 Statement ¶¶ 23-24.) This would seemingly include all of the specifically described automobiles listed in the Policy and so terminate coverage under the policy in its entirety. Some courts have estopped an insurer from belatedly denying coverage as to particular vehicles possessed by a party with whom the insurer still had some valid policy. Nat'l Indem. Co. v. Ryder Truck Rental, 646 N.Y.S.2d 169, 170 (N.Y. App. Div. 1996) (indicating that estoppel may be applicable where insurer sought to deny coverage because automobile was not a "covered vehicle"). Due to the lack of factual development on this specific point, the court assumes for purposes of this Motion that NYMP and NMP Holdings remain "insured parties" for purposes of the equitable estoppel analysis.

The court does not make the same assumption as to the Alleyne, who was never a party to the Policy. In re U.S. Specialty Ins. Co., 2017 WL 2800912, at *3 (refusing to extend coverage based on equitable estoppel to a permissible automobile user who was not himself a party to the insurance policy). Accordingly, as with any claimed prejudice to Rodriguez, prejudice to Alleyne is irrelevant to the equitable estoppel analysis.

she implicitly acknowledges that she lacks any definite insight into that company's ability to satisfy any judgment. (See Opp'n at 13 (noting "coverage under the Tower policy may or may not[] ultimately be available to indemnify Mr. Alleyne for [Rodriguez's] accident, if [Plaintiff] is successful in this lawsuit").) Absent these speculative premises, the court finds no basis to conclude that Plaintiff's control of the defense in the State Action harmed the insured parties and was "such that the character and strategy of the lawsuit can no longer be altered." Federated Dep't Stores, 807 N.Y.S.2d at 68.

Accordingly, the court finds that, as a matter of law, Plaintiff was not obliged to cover the Subject Vehicle under the Policy at the time of the Collision, and there is not sufficient prejudice to estop Plaintiff from denying such coverage.[10]

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment (Dkt. 25) is GRANTED. By no later than September 15, 2017, the parties are DIRECTED to confer and notify the court in writing as to whether there are any remaining issues requiring resolution in this case and, if not, to file a stipulation of dismissal.

SO ORDERED.

Dated: Brooklyn, New York
August 18, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[10] As a last ditch effort to require Plaintiff to provide coverage, Rodriguez suggests that NYMP's failure to change the Subject Vehicle's registration should estop Plaintiff from denying the validity of the Policy. (See Opp'n at 6.) In support of this point, Rodriguez notes a 1957 Court of Appeals case that held "a former owner [is estopped] from denying ownership of the vehicle bearing his registration plates at the time of an accident in violation of the statutes regulating the use of such plates, but only when he is sued in tort by an injured party as the owner of such vehicle." Phoenix Ins. Co., 2 N.Y.2d at 587-88. Rodriguez asks the court to extend this rule to estop the insurer from denying coverage as well. (Opp'n at 6.) As she acknowledges, however, the Court of Appeals declined to extend estoppel beyond the owner of the vehicle to the insurer. Id. at 589. Rodriguez points to no contrary authority, and the court is obliged to follow the Court of Appeals' determination as to that issue.